**AFFIRMED as MODIFIED and Opinion Filed June 8, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00273-CR**

**ANGEL JASSO RODRIGUEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-2023934-P**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Miskel
Opinion by Justice Reichek

A jury found appellant Angel Jasso Rodriguez guilty of continuous sexual abuse of a child and assessed his punishment at 75 years' confinement. In this appeal, he contends the trial court abused its discretion in allowing an outcry witness to testify about statements the complainant made during a recant interview. Appellant argues the testimony did not describe the sexual abuse and was therefore hearsay. In a cross-point, the State asks the Court to modify the judgment to include an affirmative finding that the complainant was younger than fourteen years of age at the time of the offense. For reasons that follow, we affirm as modified.

## Background

Appellant was charged by indictment with continuous sexual abuse of V.M., a child younger than fourteen. *See* TEX. PENAL CODE ANN. § 21.02(b). Appellant is V.M.'s stepfather.

In February 2016, when she was in fifth grade, V.M.'s vagina "hurt real bad" while she was at elementary school. She told her school counselor appellant sexually assaulted her, and the counselor called the police. V.M. was taken to the Dallas Children's Advocacy Center (DCAC) where she gave details about the sexual abuse to Yesenia Holley. Two weeks later, V.M. returned to DCAC and told Holley the abuse did not happen. No criminal case was filed at that time.

In the fall of 2018, when V.M. was in seventh grade, appellant beat her because he caught her texting a boy. Her middle school PE coach noticed the signs of physical abuse, and V.M. returned to DCAC. V.M. told another DCAC interviewer about the physical abuse and appellant's continued sexual abuse. A search warrant was then obtained to get a DNA sample from appellant. The police could not immediately locate appellant; he was arrested six months later in south Texas.

The day after her first interview, V.M. was examined at Children's Medical Center and her underwear was collected. Testing performed on the underwear in 2017 showed the presence of sperm cells. Additional testing was performed on the underwear in 2020 after appellant's DNA sample was obtained. The lab concluded

–2–

with a "high degree of confidence" that appellant was the source of the semen found on V.M.'s underwear.

## Appellant's Hearsay Argument

In his sole issue, appellant contends the trial court abused its discretion in permitting Holley to testify about "disclosures made by the victim during the recant interview." Appellant argues this testimony was hearsay because it did not describe the sexual assault. Appellant does not specify what disclosures he complains about or provide any record references to Holley's testimony. But from the objections made at trial, we understand appellant's complaint to involve Holley's testimony about what V.M. told her regarding why she recanted and/or things V.M. said that raised red flags. The State responds that Holley's testimony was not hearsay because it was not offered for the truth of the matter asserted and also that any error was harmless. We agree with the State.

At a pretrial hearing, the trial court certified Holley as an outcry witness pursuant to Texas Code of Criminal Procedure 38.072. Holley was the Director of Forensic Services for DCAC in February 2016. One of her duties was to conduct forensic interviews with children when allegations of abuse were made, and she first interviewed V.M. on February 8, 2016. At that time, V.M. was ten years of age and in fifth grade. V.M. told Holley that appellant started abusing her when she was in first grade. V.M. indicated appellant touched her breast with his hand and also bit her on her breasts. This conduct occurred when she was in first, second, and third

–3–

grades. By the time V.M. was in the fourth and fifth grades, appellant's conduct escalated to him penetrating her vagina and her anus with his hand and his penis. V.M. told Holley that she tried to tell her mother about appellant's behavior back when she was in first grade. Her mother told her to stay away from appellant and began to lock V.M.'s door.

At the conclusion of the interview, Holley took V.M. to the waiting room. As V.M. approached her mother, Holley observed that the mother looked "very mad," like she was mad at V.M.

On February 22, 2016, Holley saw V.M. for a second interview. It was what is known as a "recant interview." Holley was not surprised to see V.M. for a recant interview due to the fact that V.M. had disclosed the abuse to her mother years prior, but nothing else was done, and due to the look V.M.'s mother gave V.M. in the waiting area on the day of the first interview.

During the recant interview, Holley noticed red flags that indicated V.M. had been coached or told to lie. Holley testified that in general red flags include family members not being supportive or being upset, a lack of means to pay for rent, food, or utilities, and having to move or change schools. There were no red flags in Holley's first interview with V.M.

Holley was asked what disclosures V.M. made about why her first interview was not true. When she began to answer, appellant's counsel made a hearsay

objection. The trial court overruled the objection and granted a running hearsay objection to Holley's testimony about what V.M. told her about why she recanted.

After appellant's objection was overruled, Holley was asked what disclosures V.M. made that gave her red flags. V.M. told Holley that after the first interview her mother asked her why she said those things about appellant and that her mother was upset and crying. Her younger sisters, appellant's biological children, were also upset and crying because their father was no longer at home. Mother cried often, and there was "a lot of prayer with mom, the grandmother, and . . . an aunt" because of the things V.M. had said. V.M. also heard her mother invite appellant to go with them to Children's Medical Center when V.M. went in for her examination. Appellant declined to go. After the exam, V.M.'s mother told her the doctor said no one touched V.M.

We review the trial court's ruling on the admission of evidence under an abuse of discretion standard. *Tear v. State*, 74 S.W.3d 555, 558 (Tex. App.—Dallas 2002, pet. ref'd). We will not disturb the ruling on appeal if it is within the zone of reasonable disagreement. *Id.*

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d); *Bahena v. State*, 634 S.W.3d 923, 927 (Tex. Crim. App. 2021). Hearsay is inadmissible unless made admissible by statute or rule. TEX. R. EVID. 802; *Bahena*, 634 S.W.3d at 927. Article 38.072 of the code of criminal procedure creates a hearsay exception for a child's first outcry of

sexual abuse to an adult. *Bays v. State*, 396 S.W.3d 580, 581 & n.1 (Tex. Crim. App. 2013). The statute applies only in prosecutions of specified offenses if committed against a child younger than fourteen years of age. *Id.* at 581 n.1. There is a hearsay exception for out-of-court statements that (1) describe the alleged offense, (2) are made by the child against whom the charged offense was allegedly committed, and (3) are made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a).

Statements offered for the purpose of showing what was said, and not for the truth of the matter asserted, do not constitute hearsay. *Lozano v. State*, 359 S.W.3d 790, 820 (Tex. App.—Fort Worth 2012, pet. ref'd). This is particularly true when the making of the statement is relevant to a matter at issue at trial. *Id.* An out-of-court statement is offered to prove the truth of the matter asserted if it is relevant only to the extent the factfinder believes it to be true and accurate. *Cardenas v. State*, 971 S.W.2d 645, 650 (Tex. App.—Dallas 1998, pet. ref'd). If the statement's probative value does not hinge on its truthfulness, then it is not offered to show the truth of the matter asserted. *Id.*

Holley's testimony about the things V.M. told her in the recant interview, such as her mother and sisters being upset about the allegations and evidence of her mother's lack of support, were not offered to prove that they were true. They were offered to show that Holley observed red flags during the second interview and did

not believe V.M.'s recantation. The trial court could have reasonably determined that Holley's testimony about the reasons V.M. gave for recanting were not offered to prove the truth of the matter asserted. The trial court did not abuse its discretion in permitting Holley's testimony about V.M.'s statements during the recant interview.

Even if it was an abuse of discretion to permit Holley's testimony about V.M.'s statements in the recant interview, any error was harmless. The erroneous admission of evidence is nonconstitutional error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Nonconstitutional errors require reversal only if they affect a defendant's substantial rights. *Id.*; TEX. R. APP. P. 44.2. This means that an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373. The erroneous admission of evidence is not reversible error when substantially similar testimony comes in elsewhere without objection. *Cook v. State*, 665 S.W.3d 595, 600 (Tex. Crim. App. 2023).

Here, evidence similar to Holley's testimony about V.M.'s statements in the recant interview came in elsewhere without objection. V.M. herself testified about why she went back to DCAC to recant. The reasons she gave matched what Holley said V.M. told her as well as other things Holley said were red flags in general. Appellant provided for V.M., her mother, and her two sisters. With him out of the house, they did not have as much money and sometimes did not have food to eat.

V.M. saw her mother crying because she did not have enough money to pay the bills. Her sisters were also hurt because they missed their father. Further, there was other evidence V.M.'s mother did not support V.M. in her allegations against appellant, her husband. Holley personally observed that V.M.'s mother was angry with V.M. after the first interview. There was evidence V.M.'s mother had known about the sexual abuse for years without taking real action. And V.M.'s mother testified on behalf of appellant at trial, telling the jury that V.M. "tells lies." We conclude any error in the admission of Holley's testimony did not affect appellant's substantial rights. We overrule appellant's sole issue.

### State's Cross-Issue

In a cross-issue, the State asks us to modify the judgment. It argues that because V.M. was younger than fourteen at the time of the offense, the trial court should have made an affirmative finding to that effect in the judgment.

In the trial of a sexually violent offense, the judge shall make an affirmative finding of fact and enter the affirmative finding in the judgment if the judge determines that the victim was younger than fourteen years of age at the time of the offense. TEX. CODE CRIM. PROC. ANN. art. 42.015(b). Continuous sexual abuse of a young child is a sexually violent offense when it is committed by a person seventeen years of age or older. *Id.* art. 62.001(6)(A). An affirmative finding that the victim was younger than fourteen triggers provisions of the sex offender

registration program that prohibit employment in certain types of jobs. *See id.* art. 62.063(b).

It is undisputed that V.M. was younger than fourteen at the time of the offense and that appellant was in his late 30s or early 40s. The judgment contains V.M.'s age at the time of the offense ("10 years") in the section that requires appellant to register as a sex offender. *See id.* art. 42.01, § 1(27). But the "special findings" portion of the judgment does not include any findings about her age as required by article 42.015(b). This Court has the power to modify a judgment to make the record speak the truth when we have the necessary information before us to do so and may do so on its own motion. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we sustain the State's cross-issue and modify the trial court's judgment to include an affirmative finding that V.M. was younger than fourteen years of age at the time of the offense.

As modified, we affirm the trial court's judgment.


/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

220273F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ANGEL JASSO RODRIGUEZ,
Appellant

No. 05-22-00273-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-2023934-P.
Opinion delivered by Justice
Reichek. Justices Partida-Kipness
and Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** to include the following special finding:

The Court affirmatively finds that the victim was younger than
fourteen years of age at the time of the offense.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 8th day of June, 2023.